IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DISCO                           :        CIVIL ACTION
                                        :
          v.                            :
                                        :
SUPERINTENDENT, SCI FAYETTE, et al.     :        NO.  11-6385


**REPORT AND RECOMMENDATION**


M. FAITH ANGELL                                         July 26, 2012
UNITED STATES MAGISTRATE JUDGE

        Presently before this Court is a counseled Petition for Writ of Habeas Corpus filed pursuant

to 28 U.S.C. §2254.  Petitioner, Richard Disco, is currently incarcerated at SCI-Fayette in LaBelle,

Pennsylvania, where he is serving a term of imprisonment of ten to twenty years for involuntary

sexual intercourse, indecent assault, endangering the welfare of a child and corruption of a minor.

For the reasons which follow, it is recommended that Mr. Disco's habeas claims be denied and

dismissed without an evidentiary hearing.

### I.  BACKGROUND AND PROCEDURAL HISTORY[1]

        The background of this case was set forth by the Philadelphia County Court of Common

Pleas as follows:

>                 The facts as found by the jury are as follows: the complainant,
>         Natalie Denise DiDonato, who was twenty-two years old at the time
>         of trial, is [Petitioner's] stepdaughter.  She testified to a pattern of
>         sexual behavior towards her by [Petitioner] that began when she was

---

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Disco's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody; his memorandum in support of his petition; an Exhibit filed by Petitioner on March 20, 2012; the Commonwealth's Response to the Petition, inclusive of all exhibits thereto; Mr. Disco's Reply to the Commonwealth's Opposition to his Petition, and the state court record.

about eleven years old.  Specifically, one night when she was about eleven, [Petitioner] came home and took her to look for her mother and sister, who, apparently were out looking for [Petitioner].  As the two were driving, [Petitioner] stated that he wanted to teach her how to kiss.  She persistently declined, and [Petitioner] took her back home.  (N.T. 5/12/03, 57-68).

When they arrived home, Ms. DiDonato testified that she took off her favorite purple winter coat.  [Petitioner] then grabbed her and threw her onto the couch, pushing her down into a couch with her head in a pillow.  He got on top of her and pulled down her pants.  He then began licking inside her vagina and buttocks.  Every time she tried to get up, [Petitioner] held her head down.  This continued on for about 20 minutes.  After he finished, [Petitioner] laid on top of her until he fell asleep.  (N.T. 5/12/13, 65-70).

The complainant then pushed him off her, and ran up to her room.  She cried all night.  The following morning, [Petitioner] approached her to discuss what happened last night.  As she was getting ready to leave for school, he stated, "No one will believe you, and if they do, I'll hurt you, and you'll break a family up."  He also told the complainant that "I'll buy you whatever you want, don't tell your mother, don't tell nobody.  It was an accident.  It will never happen again."  (N.T. 5/12/03, 70-72).

She did not tell anyone about what [Petitioner] did to her the previous night because she was scared of what he might do if she told.  Yet this incident was not a one time occurrence.  Ms. DiDonato testified to other instances when she would be taking a shower, and [Petitioner] would look in through the shower curtain.  However, she continued not to tell anyone because she didn't want her brother to grow up without a father.[2]

On May 19, 2001, Ms. DiDonato, who at that time was twenty years old, was sleeping on the sofa in their home.  She awoke and found [petitioner] grinding on top of her body with his body.  She testified that his penis, through his clothes, was grinding on the complainant's vagina.  She kicked him, pushed him away and ran into

---

[2]Footnote2 reads:

Ms. DiDonato has no blood relationship with [Petitioner].  Her younger brother is the son of her mother and of [Petitioner].

her room.  She told her mother and they called the police. [Petitioner] ran out of the house before the police arrived and called the house numerous times stating: "How dare you call the cops; I was trying to wake you up."  (N.T. 5/12/03, 80-91).

As a result of this incident, the complainant has had nightmares, has been unable to sleep, is afraid of the dark, and is scared to walk down the street at night.  Also, she has received counseling because of this incident.  (N.T. 5/12/03, 113-114).

The complainant's sister, Janae DiDonato testified that she was awakened in the early morning of May 19, 2001 to find her sister in her bed, rocking back and forth, crying and holding herself.  When she asked her sister what was wrong, the complainant said, "Richie touched me."  Together, they told their mother[3] and the police were called.  (N.T. 5/13/03, 41-48).

Police Officer Graber arrived as a result of the call.  While Officer Graber was talking to the complainant, [Petitioner] kept calling the house demanding to speak to the complainant.  Officer Graber picked up the telephone numerous times and [Petitioner] kept hanging up.  (N.T. 5/13/03, 176-177).

After this 2001 incident, the [Petitioner] wrote several letters[4] and made dozens of phone calls to the complainant's mother, in an attempt to convince and/or threaten Natalie and her mother not to cooperate with any prosecution.  In one letter, Richard Disco wrote, he did not want the complainant to come to the hearing so that the case would be thrown out.   In another letter addressed to the complainant's mother, he wanted Ms. DiDonato to state that she did not remember the incident ever took place.  Also, in another letter, Richard Disco stated he really needed the complainant's help, and he wanted the complainant to make the charges go away by not showing

---

[3]Footnote 3 reads:

Her mother, Denise Disco also testified, among other things, to Ms. DiDonato's prompt complaint concerning this incident.  (N.T. 5/13/03, 72-73).

[4]Footnote 4 reads:

On May 9, 2003, this Court heard a pretrial motion concerning the Commonwealth's request to introduce eighteen such letters.  Most of the letters were found to be inadmissible.  Five letters were deemed admissible after inadmissible content contained in those letters first was redacted.

up for court.  (N.T. 5/12/03, 96-108; N.T. 5/13/03, 84-120).

> [Petitioner] testified over a two day period, in which he denied the allegations and proffered reasons why the Commonwealth witnesses lied.  He also proffered witnesses in an attempt to show his good character for sexual conduct, as well as the complainant's bad character for truthfulness.  In returning the verdict it did, the jury chose to believe the version of events proffered by the Commonwealth and rejected [Petitioner's] version of the events.

*Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 2-4 (C.C.P. Philadelphia County, July 27, 2004); Commonwealth's Response to Petition for Writ of Habeas Corpus[5], Document 12-2 at 2-4. Following a jury trial before the Honorable Shelley Robins New, Mr. Disco was found guilty of involuntary deviate sexual intercourse, indecent assault, endangering the welfare of a child and corruption of a minor.  *Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 1 (C.C.P. Philadelphia County, July 27, 2004); Commonwealth's Response, Document 12-2 at 1.  On October 27, 2003, the court sentenced Petitioner to an aggregate prison sentence of fourteen to 28 years. *Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 1 (C.C.P. Philadelphia County, July 27, 2004); Commonwealth's Response, Document 12-2 at 1.

Mr. Disco filed a timely appeal and presented several questions for review.  They are as follows:

> [Petitioner's] first three claims appear to be related.  He claims the Court abused its discretion in failing to grant a mistrial when requested by trial counsel, in failing to grant [Petitioner's] request for a continuance to secure counsel of his choice and in failing to permit counsel to withdraw.
> . . . . .
> Next, in his fourth claim of error, [Petitioner] claims the prosecutor committed approximately twenty-three instances of prosecutorial misconduct in her cross-examination of [Petitioner].

---

[5]Hereinafter "Commonwealth's Response".

. . . . .

Next, [Petitioner] claims the Court erred when it concluded [Petitioner] was signaling a witness.

. . . . .

[Petitioner's] next ten claims allege prosecutorial misconduct in the prosecutor's closing address to the jury.

. . . . .

Next, [Petitioner] alleges error in the court's instructions concerning Involuntary Deviate Sexual Intercourse . . .

. . . . .

Next, [Petitioner] alleges error because the Court advised the jury it was not appropriate for [Petitioner] to have direct conversations with the jury.

. . . . .

Next, [Petitioner] alleges the prosecutor committed misconduct in having the complainant identify a photograph of her when she was eleven years old.

. . . . .

Next, [Petitioner], out of the context of the trial, raises a number of complaints about comments made by the complainant during her cross examination, implying that she had been threatened.

. . . . .

Next, without any cite to the record, [petitioner] makes boilerplate allegations that the court failed to give cautionary instructions and the prosecutor committed prosecutorial misconduct.

. . . . .

Next, [Petitioner] challenges the sufficiency and weight of the evidence introduced to support the conviction for Involuntary Deviate Sexual Intercourse.

. . . . .

Next, under two alternative theories, [Petitioner] claims that the court erred in its sentencing of [Petitioner], claiming that the crimes of Corruption of a Minor and Endangering the Welfare of a Child merged into the crimes of Involuntary Deviate Sexual Intercourse and Indecent Assault (footnote omitted).

. . . . .

Finally, [Petitioner] claims the Court erred when it sentenced [Petitioner] pursuant to the provisions of Pennsylvania's Megan's Law, 42 Pa.C.S.A. §9791, et seq. (Registration of Sexual Offenders).

*Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 4-15 (C.C.P. Philadelphia County, July 27, 2004); Commonwealth's Response, Document 12-2 at 4-15. Upon Mr. Disco's appeal, the trial

court opined:

> . . . upon review, the Court notes, although a Megan's Law Assessment was ordered by the Court following the jury's verdict,[6] no assessment appears to have been completed by the time of sentencing and no hearing was held on this issue.[7]  Accordingly, no finding could be made that [Petitioner] was a Sexually Violent Predator.  See 42 Pa.C.S.A. §9795.4.  As he was not found to be a Sexually Violent Predator, any sentence that mandated the counseling provisions of 42 C.S.A. §9799.4 was error.  Should an appellate court choose to remand for re-sentencing on this limited issue and should the District Attorney seek a determination whether [Petitioner] is a Sexually Violent Predator, the District Attorney should advise the Court <u>before</u> sentencing whether the assessment has been completed so that a hearing can be held pursuant to the statute on that issue.

*Commonwealth v. Disco,* C.P. 0112-0626, slip op. at 15-16 (C.C.P. Philadelphia County, July 27, 2004); Commonwealth's Response at 15-16 (emphasis in original).   The Superior Court of Pennsylvania found:

> Following a jury trial, Richard Disco ([Petitioner]) was convicted of involuntary deviate sexual intercourse and related charges arising from an incident with his eleven-year-old step-daughter. [Petitioner] now appeals his judgment of sentence and presents several questions for our review.  The Honorable Shelley Robins New presided over [Petitioner's] trial and she has written a thorough and well-reasoned opinion that disposes of all the issues that [Petitioner] is presenting in this appeal.  We discern no abuse of discretion or error of law in Judge Robins New's opinion, and therefore, we adopt it as our own for purposes of further appellate review.  Furthermore, consistent with Judge Robins New's opinion and the Commonwealth's brief on appeal, we remand this case for

---

[6]Footnote [11] reads:

   See N.T. 5/19/03, 22.

[7]Footnote [12] reads:

   As noted in the statute, it is the District Attorney's responsibility, not the Court has to seek a hearing to determine whether the offender is a Sexually Violent Predator. 42 Pa.C.S.A. §9795.4(e)(1).

> compliance with 42 Pa.C.S. §§9791-9799.9, and in particular, an
> assessment of [Petitioner] to determine if he is a sexual violent
> predator pursuant to 42 Pa.C.S. §9795.4.

*Commonwealth v. Disco*, No. 3411 EDA 2003, slip op. at 1-2 (Superior Court, August 23, 2005);

Commonwealth's Response, Document 12-3 at 1-2. The judgment of sentence was vacated, and the

case was remanded for resentencing. *Commonwealth v. Disco*, No. 3411 EDA 2003, slip op. at 2

(superior Court, August 23, 2005); Commonwealth's Response, Document 12-3 at 2. "A new

sentencing hearing was conducted in June 2006 following which [Petitioner] was re-sentenced to

ten to 20 years' imprisonment. A timely notice of appeal from [Petitioner's] newly imposed

sentence was later withdrawn." *Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 4-5

(Superior Court, August 30, 2010); Commonwealth's Response, Document 12-5 at 4-5.

On June 11, 2007, Mr. Disco filed a *pro se* petition for collateral review and relief pursuant

to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §9541, *et seq.* Counsel was

appointed, and an amended petition was filed. In Petitioner's amended petition, he assigned 35

specific instances of alleged ineffective assistance of trial counsel. *See* Commonwealth's Response,

Document 12-4 at 3. The Commonwealth filed a motion to dismiss, and the PCRA court dismissed

Mr. Disco's petition without a hearing on February 9, 2009. A timely notice of appeal was filed on

February 25, 2009. *See Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 5 (Superior Court,

August 30, 2010); Commonwealth's Response, Document 12-4 at 5. Pennsylvania's Superior Court

further explained:

> On September 4, 2009, [Petitioner] filed a *pro se* application
> for stay of appeal, claiming that appointed counsel failed to raise
> three issues which required our consideration. By order dated
> October 5, 2009, we denied [Petitioner's] *pro se* application and
> directed counsel's attention to our decisions in *Commonwealth v.*

7

> *Lawrence*, 596 A.2d 165 (Pa. Super. 1991) and *Commonwealth v.
> Battle*, 879 A.2d 266 (Pa. Super. 2005).  On January 14, 2010,
> [Petitioner] filed a second *pro se* application for stay of appeal,
> alleging that counsel failed to comply with our order dated October
> 5, 2009.  Thereafter, we entered an order denying [Petitioner's]
> application for a stay but directed counsel to comply with *Lawrence*
> and *Battle* no later than March 18, 2010.  In response, counsel filed
> a submission styled as a "petition for remand pursuant to order of the
> Superior Court."  By order of May 13, 2010, counsel's response was
> deferred for consideration by the panel assigned to decide the merits
> of this appeal.  Thus, [Petitioner's] counseled petition for remand is
> pending before us and we address it at the conclusion of this
> memorandum.

*Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 5-6 (Superior Court, August 30, 2010);

Commonwealth's Response, Document 12-5 at 5-6.  The Superior Court than addressed the issue

raised on appeal:

> Did the Honorable PCRA Court err when it dismissed the
> [Petitioner's] Amended Petition without a Hearing, and where the
> [Petitioner] pled and would have been able to prove that he was
> entitled to relief in the form of a new trial?

*Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 6 (Superior Court, August 30, 2010);

Commonwealth's Response, Document 12-5 at 6.  The dismissal of Mr. Disco's PCRA petition was

affirmed, and his petition for remand was denied.  *See Commonwealth v. Disco*, 11 A.3d 1042 (Pa.

Super. 2010) (Table); *Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 12 (Superior Court,

August 30, 2010); Commonwealth's Response, Document 12-5 at 12.  On March 29, 2011, the

Supreme Court of Pennsylvania denied further review.  *See Commonwealth v. Disco*, 19 A.3d 1049

(Pa. 2011) (Table).

On October 12, 2011, counsel for Petitioner filed the instant Petition for Relief from a

Conviction or Sentence by a Person in State Custody[8] in the Eastern District of Pennsylvania.  The

following claims are raised:

>GROUND ONE: The conviction was obtained in violation of the
>right to counsel of choice.
>
>GROUND TWO: Ineffective assistance of counsel.
>
>GROUND THREE: Prosecutorial misconduct.

Petition at 6-10.  The Commonwealth denies that Mr. Disco is entitled to federal habeas relief.  *See*

Commonwealth's Response at 17.


## II.  DISCUSSION

### A. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act"),[9] signed

into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions.  One

of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state

prisoners who seek federal habeas relief.  A habeas petition must be filed within one year from the

date on which the petitioner's judgment of conviction becomes final.  *See* 28 U.S.C. §2244(d)(1).[10]

In the instant case, though Mr. Disco filed a direct appeal after his resentencing, which took

---

[8]Hereinafter "Petition".

[9]Pub.L.No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

[10]While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitations period to run from four other points of time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence".  28 U.S.C. §2244(d)(1).

place on June 8, 2006, that appeal was withdrawn on February 13, 2007. *See* Commonwealth's Response, Document 12-4 at 2. Consequently, his conviction became final on that date, February 13, 2007. Because Petitioner's conviction became final after the effective date of AEDPA, he was required to file his federal habeas corpus petition by February 13, 2008, unless his petition was subject to statutory or equitable tolling.

The amended habeas statute does include a tolling provision for "the time during which a properly filed application of State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. §2244(d)(2). Mr. Disco filed a *pro se* PCRA petition on June 11, 2007, after 118 days had passed of his one-year time period. The statute of limitations period was tolled during the entire time that Petitioner's PCRA petition was pending, from June 11, 2007, through March 29, 2011, when the Pennsylvania Supreme Court declined *allocatur* review. The instant petition for writ of habeas corpus was filed on October 12, 2011.

The Commonwealth does not dispute, and I independently find, that Mr. Disco's habeas petition is timely.

## B. Exhaustion and Procedural Default

The exhaustion rule, codified in 28 U.S.C. §2254[11], provides that the habeas petitioner must

---

[11] The exhaustion requirements of 28 U.S.C. §2254 provide:

(b)(1) an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that:
  (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B)(i) there is an absence of available State corrective process, or
      (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

have "exhausted the remedies available in the courts of the State" for all constitutional claims before a federal court shall have habeas corpus jurisdiction. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). There are rare circumstances that circumvent this requirement, none of which apply to the case at hand. To exhaust all remedies for a claim under 28 U.S.C. §2254, the habeas petitioner must give the state courts a full and fair opportunity to resolve all federal constitutional claims. *See Stevens v. Delaware Corr. Ctr.,* 295 F.3d 361, 369 (3d Cir. 2002); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order for Mr. Disco to give his claims a full and fair opportunity for resolution, he must have presented both the factual and legal substance in the state courts through the highest tribunal, the Pennsylvania Superior Court.[12] The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of the state judicial proceedings. *See Rose v. Lundy*, 102 S.Ct. 1198, 1203 (1982); *Castille*, 489 U.S. at 348 (1989). The burden is on the habeas petitioner to establish that he has fairly presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993)). ("[b]oth the legal theory and the

---

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirements unless the State, through counsel, expressly waives th requirement.

(c) An Applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[12] Seeking *allocatur* by the Pennsylvania Supreme Court is not part of the standard appeals process. *See* Pennsylvania Supreme Court *Order No. 218* (May, 2000); *see also Mattis v. Vaughn*, 128 F. Supp.2d 249, 261 (E.D.Pa. 2001); *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

facts underpinning the federal claim must have been presented to the state courts . . . and the same method of legal analysis must be available in the state court as will be employed in the federal court").

An unexhausted habeas claim becomes procedurally defaulted when the petitioner has no additional state remedies available to pursue the issue. *See Wenger v. Frank*, 266 F.3d 218, 223-224 (3d Cir. 2001), *cert. denied*, 122 S.Ct. 1364 (2002). (When a claim has not been fairly presented to the state courts, but further state court review is clearly foreclosed under the state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default.)

Procedural default also occurs when an issue is properly asserted in the state system, but it is not addressed on the merits because of an independent and adequate state procedural rule. *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) and *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("If the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law, independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.")

Procedural default may be excused if the habeas petitioner can show "cause" for the default and "prejudice attributable thereto", or the petitioner can demonstrate that the failure to consider his or her habeas claim will result in a "fundamental miscarriage of justice". *Wenger*, 266 F.3d at 224 (3d Cir. 2001) and *McCandless*, 172 F.3d at 260 (3d Cir. 1999). "Cause" for procedural default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule". *Murray v. Carrier*, 477 U.S. 478, 488

12

(1986); *Slutzker v. Johnson*, 393 F.3d 373, 381-382 (3d Cir. 2004).  A petitioner can only prove

prejudice, in turn, by demonstrating that the errors at trial "worked to his *actual* and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions".  *Murray*, 477 U.S.

at 494 (1986) (*citing United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).  To

establish a "miscarriage of justice", a petitioner must present new evidence of "actual innocence".

*Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Goldblum v. Klem*, 510 F.3d 204, 216 (3d Cir. 2007).

Evidence of actual innocence, not presented at trial, sufficient to excuse procedural default must be

"reliable evidence" that shows that "it is more likely than not that no reasonable juror would have

convicted him in light of the new evidence".  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).  *See*

*also Schlup*, 513 U.S. at 324, 329 (1995) (defining "reliable evidence" as "exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence").

Section 2254 also provides that the court may deny a habeas petition on the merits,

notwithstanding the petitioner's failure to exhaust state remedies.  *See* 28 U.S.C. §2254(b)(2).  *See*

*also e.g. Clark v. Ricci*, 285 Fed.Appx. 933, 935 (3d Cir. 2008) (The court may deny unexhausted

claims if they are without merit.)

### C.  Standard of Review

Because Mr. Disco's habeas petition was filed after the effective date of the AEDPA, the

amended habeas standards apply to his claims.  AEDPA precludes habeas relief on "any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1)

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. §2254(d) (Supp. 1998). "[C]learly established

Federal law under 28 U.S.C. §2254(d)(1) is the governing legal principle or principles set forth by

the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 528 U.S.

63, 71-72 (2003).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of

deference which AEDPA requires a federal habeas court to accord a state court's construction of

federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v.*

*Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied* 120 S.Ct. 73 (1999). The Third

Circuit has held that under 28 U.S.C. §2254(d)(1), a two-step inquiry is warranted. The majority

agreed:

> First, the federal habeas court must determine whether the state court
> decision was contrary to Supreme Court precedent that governs the
> petitioner's claim. Relief is appropriate only if the petitioner shows
> that Supreme Court precedent requires an outcome contrary to that
> reached by the relevant state court. In the absence of such a showing,
> the federal habeas court must ask whether the state court decision
> represents an unreasonable application of Supreme Court precedent;
> that is, whether the state court decision, evaluated objectively and on
> the merits, resulted in an outcome that cannot reasonably be justified.
> If so, then the petition should be granted.

*Matteo*, 171 F.3d at 891 (3d Cir. 1999) (internal quotations and citations omitted).

The United States Supreme Court has set forth the scope of habeas review after AEDPA.

*See Williams v. Taylor*, 529 U.S. 362 (2000). According to the *Williams* majority:

> We [the Supreme Court Justices] all agree that state-court judgments
> must be upheld unless, after the closest examination of the state-court
> judgment, a federal court is firmly convinced that a federal
> constitutional right has been violated . . .

> In sum, the [AEDPA] statute directs federal courts to attend

14

> every state-court judgment with utmost care, but it does not require
> them to defer to the opinion of every reasonable state-court judge on
> the content of federal law. If, after carefully weighing all the reasons
> for accepting a state-court's judgment, a federal court is convinced
> that a prisoner's custody - or as in this case, his sentence of death -
> violated the constitution, the independent judgment should prevail.

*Williams,* 529 U.S. at 389 (2000).

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and appellate courts are correct.  The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary.  *See Stevens v. Delaware Correctional Center, et al.,* 295 F.3d 361, 368 (3d Cir. 2002).

**D. Analysis**

1. Right to Counsel of Choice

Mr. Disco's first claim asserts that his conviction was obtained in violation of his right to counsel of choice.  Petitioner explains that the trial judge forced him to stand trial with an appointed lawyer who was unprepared and who did not want to represent him.  Petition at 6.  This claim appears to have been presented to the state courts during direct appeal[13]; therefore, it is properly before this Court.

The United States Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the demands of its calendar.  The court has, moreover, an

---

[13]The trial court opined:

> [Petitioner's] first three claims appear to be related.  He claims the Court
> abused its discretion in failing to grant a mistrial when requested by trial counsel,
> in failing to grant [Petitioner's] request for a continuance to secure counsel of his
> choice and in failing to permit counsel to withdraw.

*Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 2 (C.C.P. Philadelphia County, July 27, 2004).

independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citations and quotations omitted). *See also Morris v. Slappy*, 461 U.S. 1 (1983).

As the trial court revealed,

> Following the Court's initial comments to the jury and the Court's invitation to the prosecutor to begin her opening address, [Petitioner] stated he wanted "jury nullification," that he was in prison, that the court would not allow him to prepare the case with counsel of his choice, and that his attorney did not have all the evidence." After the jury was removed, counsel then requested a mistrial and again requested the opportunity to withdraw[14], both of which were denied. After the jury returned to the courtroom, the Court, *sua sponte*, gave a cautionary instruction and the prosecutor then began her opening. (N.T. 5/12/03, 18-30).

> It is black letter law; a denial of a request for a continuance is within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. *Commonwealth v. Busanet*, 817 A.2d 1060, 1076 (Pa., 2002). Similarly, although the right to counsel is absolute, there is no absolute right to a particular counsel, and appointed counsel shall not be removed except for substantial reasons. *Commonwealth v. Moore*, 633 A.2d 1119 (Pa., 1993). See also, Pa.R.Crim.P. 122(c)(2) (A motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons.)

> [Petitioner's] motivation when he started his outburst was patently clear to this Court. He sought, by whatever means necessary the opportunity to abort and/or delay trial in this matter. Indeed,

---

[14]Footnote [5] reads:

Earlier, counsel also sought to withdraw which was denied. (See N.T. 5/12/03, 29)

16

during his outburst, [Petitioner] disclosed his motivation when he stated, "I have to force a mistrial." (N.T. 5/12/03).

[Petitioner] had taken this approach to frustrate justice since the matter was assigned to this Court for trial. Mr. Krakower, who had been in this case for at least six months prior to trial, was fully aware of the issues and appeared to this Court to be fully prepared for trial, was at least the third attorney who had represented [Petitioner] in this matter. On May 8, 2003, four days before the above outburst, counsel also sought to withdraw. In addressing counsel's request to withdraw, the Court stated, "[H]e's done exactly the same thing with two previous prior counsels, which is Mr. Patrizio and Mr. Perry. . . I will also note, Mr. Krakower, that the issues that Mr. Disco has raised concerning you, appear from my file to be what he has done with each counsel. So he does not appear to believe that any attorney is qualified to represent him. He's been given ample time, and I am sure if you reviewed the Quarter Sessions file for the 600(e) motion, you will see that the Court has given him lengthy continuances to resolve the issues with his previous private counsel. He was unable to do so. That's why the Court appointed counsel." (N.T. 5/8/03, 3-4). Clearly, under these circumstances, this Court's decision to allow [Petitioner's] trial to occur with competent counsel is not error.

*Commonwealth v. Disco*, C.P. 0112-0626, slip op. at 4-6 (C.C.P. Philadelphia County, July 27, 2004). It is more than evident that the trial court's refusal to permit substitution of counsel in this case was within its discretion. The state court's resolution of this issue was neither a contradiction of, nor an unreasonable application of, federal law. Mr. Disco is not entitled to federal habeas relief herein.

## 2. Ineffective Assistance of Counsel

Petitioner's second claim is that of ineffective assistance of counsel.[15] He alleges that the Pennsylvania Superior Court failed to apply the *Strickland* standard. *See* Petition at 8. Mr. Disco

---

[15]Mr. Disco asserts numerous instances of alleged ineffective assistance of counsel where "[t]rial counsel failed to object or move for a mistrial based on the following instances of prosecutorial misconduct". He then lists 24 such instances. Memorandum of Law supporting Petition for Habeas Corpus under 28 U.S.C. 2254 ("Petitioner's Memorandum") at 35-40.

asserted that he was entitled to PCRA relief on the grounds of ineffective assistance of counsel, and, upon his appeal to the Superior Court of Pennsylvania, he asked if the PCRA court erred when it dismissed his amended petition without a hearing. *See Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 6 (Superior Court, August 30, 2010); Commonwealth's Response, Document 12-5 at 6. As the Superior Court thoroughly addressed the underlying issue of ineffective assistance of counsel, this claim is deemed to be properly before this Court.

Ineffective assistance of counsel claims are evaluated under a two-prong test that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, counsel is presumed to have acted reasonably and effectively unless the petitioner can demonstrate that "counsel's representation fell below an objective standard of reasonableness" and there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland,* at 686-688, 693-694 (1984). Under the *Strickland* standard, counsel cannot be held ineffective for failing to raise a claim that is without merit or is futile. *See Premo v. Moore*, 131 S.Ct. 733, 741 (2011); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

As the Pennsylvania Superior Court opined in this matter:

> [Petitioner] asserts that he is entitled to post-conviction relief on grounds of ineffective assistance of counsel and that the PCRA court erred in dismissing his petition without a hearing. In his petition, [Petitioner] cited 35 alleged instances of counsel's ineffectiveness based on claims that trial counsel improperly failed to object, move for a mistrial, or request cautionary instructions in response to questions posed by the Commonwealth during [Petitioner's] cross-examination and in response to statements made

by the prosecution during its closing argument.[16]

     [Petitioner] does not give any of his 35 claims individualized treatment, but instead alleges generally that the prosecutor engaged in misconduct throughout the trial by vouching for the credibility of the Commonwealth's witnesses, unfairly stigmatizing [Petitioner] and his witnesses as liars, arguing unfair inferences from the record, asking biased and irrelevant questions, and intentionally inflaming the passions of the jury. [Petitioner] declares that trial counsel was ineffective because he failed to object to the prosecutor's alleged misconduct. Alternatively, [Petitioner] claims that, to the extent counsel posed objections to the prosecutor's questions and statements, counsel was nevertheless ineffective in failing to request cautionary instructions or a mistrial. Based upon our review of the parties' submissions together with the certified record, we conclude that [Petitioner] failed to properly plead and prove that trial counsel was ineffective; thus, the PCRA court properly dismissed his claims without a hearing.

          . . . . .

     Under Pennsylvania law, an appellate court presumes that counsel has rendered effective assistance. *Commonwealth v. Harris*, 852 A.2d 1168, 1173 (Pa. 2004). "Therefore, to succeed on a claim that counsel was ineffective, an appellant must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the act or omission in question; and (3) he suffered prejudice as a result of counsel's deficient performance; *i.e.*, there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Id.*, citing *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001).

     Where any single element of the foregoing test has not been established, a PCRA petition may be dismissed without a determination as to the remaining factors. *Commonwealth v. Hall*, 872 A.2d 1177, 1184 (Pa. 2005). Thus, counsel cannot be deemed ineffective where he allegedly fails to pursue a meritless trial

---

[16]Footnote [3] reads:

    In his brief, [Petitioner] enumerated 24 separate instances of alleged ineffective assistance of trial counsel which occurred during the evidentiary phase of his trial when the prosecutor conducted her cross-examination of [Petitioner]. [Petitioner's Brief at 10-12. [Petitioner] also listed 11 occurrences of claimed ineffective assistance stemming from the Commonwealth's closing argument to the jury. *Id.* at 12-13.

objection. *Commonwealth v. Spotz*, 650 A.2d 863, 866 (Pa. 1994). In addition, a PCRA petition may be dismissed where the petitioner fails to plead and prove that trial counsel did not have a reasonable, strategic basis for his actions. *See Commonwealth v. Marshall*, 812 A.2d 539, 548 (Pa. 2002) (claim for post-conviction relief fails even if petitioner demonstrates arguable merit and actual prejudice where petitioner fails to affirmatively show that counsel lacked reasonable justification for his actions). Finally, where the petitioner fails to show that he suffered prejudice as a result of counsel's deficient performance, his claim is subject to dismissal on that basis alone. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995), citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

In both his petition and his brief to this Court, [Petitioner] has entirely failed to present any facts, persuasive legal authority, or compelling argumentation that support his claim that he is entitled to post-conviction relief. Nowhere does [Petitioner] demonstrate, for each alleged ineffectiveness claim, that his claims possessed underlying merit, that counsel lacked reasonable grounds for his actions, and that he suffered prejudice as a result of counsel's allegedly deficient performance. Instead, [Petitioner] simply enumerates multiple exchanges with, and comments by, the prosecutor and asserts, in conclusory fashion, that counsel's failure to object (or, alternatively, to request cautionary instructions or a mistrial) constituted ineffective assistance because the questions and/or comments by the prosecutor were irrelevant, prejudicial, or calculated to inflame and impassion the jury. In sum, [Petitioner] failed to adequately plead and prove, in the particular circumstances of this case, each of the required factors of a viable ineffectiveness claim.

We are unsurprised by [Petitioner's] failure to undertake an individualized analysis of his claims as our review of the record confirms that for the substantial majority of cited examples of alleged ineffectiveness, an objection was, in fact, lodged by [Petitioner's] attorney, but was overruled by the trial court. In reference to [Petitioner's] claims stemming from the evidentiary phase of his trial, the PCRA court determined that where trial counsel's objections were overruled, the prosecutor's questions were relevant and [Petitioner's] answers were admissible. PCRA Court Opinion, 10/14/09, at 7. Moreover, with respect to [Petitioner's] claims which arose out of the Commonwealth's closing argument, the trial court concluded that the prosecutor's statements constituted proper comment on the evidence

20

and/or fair responses to claims made by defense counsel during his closing argument. *Id.* [Petitioner] offers no reasons which compel us to disturb these conclusions. As a result, counsel cannot be faulted for failing to further pursue meritless claims and objections.

In other instances of alleged ineffective assistance, the court sustained objections lodged by trial counsel. In these cases, [Petitioner's] claim is clearly that counsel was ineffective in failing to request cautionary instructions or in failing to seek a mistrial. Our review of the record reveals, however, that in these instance, the trial court issued cautionary instructions and reminded the jury of its role as the arbiter of the facts relating solely to the charges before the court. Furthermore, with respect to this second category of ineffectiveness claims, we do not see how [Petitioner] has met the heavy burden of establishing that he is entitled to a mistrial on grounds of prosecutorial misconduct, given the overwhelming evidence of his guilt as demonstrated by the testimony of the victim. *See Commonwealth v. Carson*, 913 A.2d 220, 236 (Pa. 2006) (prosecutorial misconduct not established unless the prosecutor's challenged comments had the unavoidable effect of prejudicing the jury with such an animus toward the defendant as to render it incapable of fairly weighing the evidence and arriving at a just verdict). Again, counsel may not be deemed ineffective for failing to request a mistrial where such a claim lacked arguable merit.

Finally, [Petitioner] challenges counsel's performance in certain instances where counsel failed to raise objections to questions and comments made by the prosecutor. Even assuming that these claims possessed arguable merit, which we do not, [Petitioner] has offered no evidence to affirmatively establish that counsel lacked a strategic justification in declining to assert an objection. Moreover, given the ample evidence proffered by the Commonwealth to establish [Petitioner's] guilt, we perceive no basis on which to conclude that [Petitioner] was prejudiced by counsel's chosen course of action. Thus, [Petitioner] is entitled to no relief on his claim that counsel was ineffective in failing to object to questions and comments by the prosecution.

*Commonwealth v. Disco*, No. 606 EDA 2009, slip op. at 6-11 (Superior Court, August 30, 2010);Commonwealth's Response, Document 12-5 at 6-11.

The Pennsylvania standard for judging ineffectiveness of counsel claims is not contrary to

the ineffectiveness standard enunciated in *Strickland*.  *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Spence v. Sobina*, 2001 WL 1161799*7 (E.D.Pa. February 24, 2011).  Therefore, "the Pennsylvania courts identified the correct governing legal principle" in this matter.  *Spence*, 2001 WL 1161799*7 (internal citations omitted).  The state court's resolution of the issue is certainly reasonable and not contrary to nor an unreasonable application of federal law.  Petitioner is not entitled to federal habeas relief on this claim.

### 3. Prosecutorial Misconduct

In Mr. Disco's third claim, he alleges prosecutorial misconduct.  He claims that the prosecutor engaged in trial by character assassination by trying Petitioner for who he was and not for what he did.  *See* Petition at 9.  In his initial direct appeal, Mr. Disco raised a number of instances of prosecutorial misconduct, and the same will be addressed herein.

Habeas corpus relief is available only if the prosecutor's acts so infected the trial as to make the resulting conviction a denial of due process.  *Greer v. Miller*, 483 U.S. 756, 765 (1987).  The due process clause is not violated by an event at a state trial that is merely "undesirable, erroneous, or even 'universally condemned'."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *See also Parket v. Matthews*, 132 S.Ct. 2148, 2153 (2012; *Baezv. Palavich,* 2005 WL 433459*7 (E.D.Pa., 2005).  Rather a petitioner must show that he was deprived of a fair trial.  *Smith v. Phillips*, 455 U.S. 209, 221 (1982). In evaluating whether or not the alleged misconduct rose to the level of a constitutional violation, the court must examine the prosecutor's conduct in the contest of the trial as a whole. *Greer*, 483 U.S. at 766

The trial court opined, and the Superior Court of Pennsylvania agreed as follows:

Next, in his fourth claim of error, [Petitioner] claims the

22

prosecutor committed approximately twenty-three instances of prosecutorial misconduct in her cross-examination of [Petitioner]. Procedurally, as will be more fully set forth below, no timely objection was raised to many of these questions. Accordingly, those claims are waived. *Commonwealth v. Watkins*, 843 A.2d 1203, 1219 (Pa. 2003); Pa.R.A.P. 302(a). Moreover, objections to some questions were sustained. Those questions were not answered and no curative instruction was requested. Accordingly, those claims too are waived. *Commonwealth v. Watkins, supra.*

Moreover, the Court has reviewed each instance of alleged error and as will be more fully set forth below, finds no merit to any of these claims. As [Petitioner] has grouped these claims into five categories, they will be discussed in that order.

[Petitioner's] first group of challenges allege the prosecutor committed prosecutorial misconduct in asking four specific questions about [Petitioner's] fitness as a father, specifically with respect to his son. We note no objection was raised to his first challenged question or to his third challenged question. Those challenges therefore are waived. *Commonwealth v. Watkins, supra,* Pa.R.A.P. 302(a). An objection was sustained to the fourth challenged question and the question was never answered, despite the fact after the objection was sustained, [Petitioner] stated, "I would like to answer that." (N.T. 5/15/03, 157.) No further relief was requested by [Petitioner]. Accordingly, that claim, too is waived. *Commonwealth v. Watkins, supra,* Pa.R.A.P. 302(a).

Concerning his one preserved challenge on this issue, it is well settled that prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. *Commonwealth v. Paddy*, 800 A.2d 294, 316 (Pa. 2002). It is beyond dispute [Petitioner] cannot meet this burden concerning any question asked by the prosecutor concerning [Petitioner's] relationship with his son. Indeed, it was [Petitioner], who first raised the issue of his relationship with his son in his direct testimony. (N.T. 5/14/03, 143-146.) On cross examination, this Court permitted the prosecutor to question [Petitioner] briefly on issues raised on direct examination. No prosecutorial misconduct occurred on this issue.

23

[Petitioner's] next group of challenges allege the prosecutor committed prosecutorial misconduct in asking eight specific questions about [Petitioner's] prior bad acts. We note no objection was raised to any of these questions. Therefore all of these challenges are waived. *Commonwealth v. Watkins*, supra, Pa.R.A.P. 302(a).

[Petitioner's] next group of challenges alleges the prosecutor committed prosecutorial misconduct in asking two specific questions about [Petitioner's] parole history. We note no objection was raised to either of these questions. Therefore these challenges also are waived. *Commonwealth v. Watkins, supra,* Pa.R.A.P. 302(a). Moreover, it was [Petitioner] who first raised the issue that he was on parole in his direct testimony and that he denied having any alcohol while in the half-way house. (N.T. 5/14/03, 127-129). Accordingly this challenged brief line of questioning on cross examination was proper.

[Petitioner's] next group of challenges allege the prosecutor committed prosecutorial misconduct in asking six specific questions about [Petitioner's] drug and alcohol history. We note no objection was raised to any of these questions. Therefore all of these challenges are waived. *Commonwealth v. Watkins, supra,* Pa.R.A.P. 302(a).

[Petitioner's] next group of challenges allege the prosecutor committed prosecutorial misconduct in asking three specific questions about [Petitioner's] mental health history. Again, we note no objection was raised to any of these questions. Therefore all of these challenges are waived. *Commonwealth v. Watkins*, *supra*, Pa.R.A.P. 302(a).

Next, [Petitioner] alleges the prosecutor committed misconduct when she questioned [Petitioner] about protection from abuse orders. Again, here the Court simply allowed the prosecutor to briefly explore issues raised by [Petitioner] in his direct testimony.[17] Indeed, in overruling [Petitioner's] objection to this line of questioning at trial, the Court stated, "The Court notes your objection, Counsel, but will also note that, Counsel as part of your case in chief in your direct examination [you] brought up the protection from abuse orders with your client, and therefore, it is appropriate subject for

---

[17]Footnote [6] reads:

See N.T. 5/15/03, 5-7.

cross-examination." (N.T. 5/15/03, 163).

Moreover, in order to remove any possibility of taint that could have resulted from this line of questioning, the Court *sua sponte* gave a cautionary instruction to the jury concerning how they could consider this evidence. (N.T. 5/15/03, 163-143) Accordingly, this claim, too, is baseless.

Next, [Petitioner] claims the prosecutor committed misconduct when she asked [Petitioner] if he was aware that his wife had not told his son, "[O]f the horrific things you did to [the complainant]." First, we note the Court sustained [Petitioner's] objection to the question and no further relief was requested. (N.T. 5/15/03, 184)[18] Therefore, the claim is waived. *Commonwealth v. Watkins, supra*, Pa.R.A.P. 302(a).

Moreover, the question was asked almost immediately after [Petitioner] claimed his former wife and family were conspiring to separate him from his son. The prosecutor's question was aimed at addressing the fact that despite that claim, [Petitioner's] wife did <u>not</u> tell her son about the instant allegations. In no way can this question be deemed to meet the high standard of prosecutorial misconduct.

Next, [Petitioner] alleges the prosecutor committed misconduct in making repeated reference to the fact that the complaining witness has worked for the same employer for a period of time, had gone to Catholic School and had been promoted by her employer. First, [Petitioner] has failed to cite to the record to advise us of these repeated references. We have reviewed the record and find no such repeated references in the testimony of the complainant or in the prosecutor's closing address. Accordingly, the claim is meritless.

Next, [Petitioner] alleges the prosecutor committed misconduct in repeatedly questioning [Petitioner] about his use of stolen credit cards. [Petitioner] has failed to cite to the record to advise us of these repeated references. However, assuming *arguendo* that such repeated references were made; it was [Petitioner] on both

---

[18]Footnote [7] reads:

We note that [Petitioner], in his Statement of Matters Complained of on Appeal did not cite to the record to advise the court of where this instance of alleged error occurred.

direct and cross who introduced his background of theft and credit card fraud. (N.T. 5/14/03, 150, 5/15/03, 21). The prosecutor therefore was permitted to briefly explore this issue further on cross-examination, and that is all she did. (N.T. 5/15/03, 22-24) Accordingly, no error occurred here, either.

Next, again with no cite to the record, [Petitioner] alleges the prosecutor committed misconduct in repeatedly questioning [Petitioner] and making references in argument to his parole violations. This issue was previously addressed above.

Next, [Petitioner] alleges prosecutorial misconduct in the questioning of Commonwealth rebuttal witness, Dana Roth. We note the prosecutor's offer of proof concerning this witness (N.T. 5/16/03, 25), and we note the witness did testify consistent with the offer of proof. The testimony was admissible for the reasons stated in the offer of proof and, therefore, no misconduct occurred. *Commonwealth v. Paddy, supra*. In addition, we note that [Petitioner] voiced no objection either after the offer of proof, nor during Ms. Roth's testimony. Accordingly, that claim is waived. *Commonwealth v. Watkins, supra*. Pa.R.A.P. 302(a).

Next, [Petitioner] alleges the prosecutor committed misconduct in referring to [Petitioner's] testimony as "a charade." In making this claim, [Petitioner] misstates the prosecutor's characterization. On re-cross examination of [Petitioner], the prosecutor asked, "Now, on redirect examination, you were asked questions about [*sic*] your lawyer, directing you to the breathalyzer charade and you stated. You stated . . ." An immediate objection to the characterization was made by [Petitioner] and sustained by the Court. No request for a cautionary instruction was made. The question was rephrased without the implication of the word, "charade." (N.T. 5/15/03, 209). [Petitioner] therefore, is entitled to no further relief concerning this claim.

. . . . .

[Petitioner's] next ten claims allege prosecutorial misconduct in the prosecutor's closing address to the jury. First, we note although [Petitioner] repeatedly objected both during and after the prosecutor's closing, no objections were made concerning the seven complained of comments enumerated in paragraphs 15, 16, 17, 18, 21, 22, and 24 of [Petitioner's] Statement of Matters Complained of on Appeal. Accordingly, those claims are waived. *Commonwealth v. Watkins, supra*. In addition, we have independently reviewed each

of these comments and find them to be fair comments upon the evidence and/or fair responses to the arguments of [Petitioner]. Accordingly, no prosecutorial misconduct occurred in these comments. *Commonwealth v. Banks*, 677 A.2d 335 (Pa. Superior 1996) (prosecutor's remarks during closing argument will seldom mandate a new trial. 'Even where the language of a prosecutor is intemperate, uncalled for and improper, a new trial is not required unless its unavoidable effect would be to prejudice the jury, forming in their minds, fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.')

Concerning the two complained of comments enumerated in paragraphs 20 and 23 in [Petitioner's] Statement of Matters Complained of on Appeal, we note objections to these comments were sustained. No further relief was requested and no relief now is warranted.

[Petitioner's] final claim of prosecutorial misconduct, as stated in paragraph 19 of his Statement of Matters Complained of on Appeal concerns comments made about [Petitioner's] demeanor at trial. Although it properly is preserved for appellate review, it is meritless. This simply was a fair comment upon [Petitioner's] conduct during the trial and falls far short of any claim of prosecutorial misconduct. *Commonwealth v. Banks, supra.*
. . . . .
Next, [Petitioner] alleges the prosecutor committed misconduct in having the complainant identify a photograph of her when she was eleven years old. As noted above, at the time of trial the complainant was twenty two years of age. Some of the conduct for which [Petitioner] was being tried for occurred when the complainant was eleven. As such, the jury was permitted to see a photograph of the complainant taken at her age when [Petitioner] first assaulted her.[19] No prosecutorial misconduct occurred here. *Commonwealth v. Paddy, supra.*
. . . . .
Next, without any cite to the record, [petitioner] makes boilerplate allegations that the court failed to give cautionary instructions and the prosecutor committed prosecutorial misconduct.

---

[19]Footnote [8] reads:

The Court viewed the photograph and found nothing inflammatory in the photograph. Indeed, [Petitioner's] only objection to the photograph was on relevancy grounds. (N.T. 5/12/03, 112-113).

> Those claims, which have been properly preserved, have been addressed above.

*Commonwealth v. Disco,* C.P. 0112-0626, slip op. at 6-13 (C.C.P. Philadelphia County, July 27, 2004 (emphasis in original); Commonwealth's Response, Document 12-2 at 6-13; *see also Commonwealth v. Disco*, No. 3411 EDA 2003, slip op at 1 (Superior Court, August 23, 2005; Commonwealth's Response, Document 12-3 at 1.

A number of Mr. Disco's claims concerning prosecutorial misconduct were found waived by the state court, making them procedurally default herein. As mentioned above, a claim is procedurally defaulted when a state court refuses to address the claim on its merits because the defendant failed to present the issue to the state court in the manner prescribed by that court's procedural rules. The claims are unreviewable if the state court procedural bar is based upon "independent and adequate" state grounds. An issue is waived "if the petitioner could have raised it but failed to do so" at an earlier stage. *See* 42 Pa.C.S.A. §9544(b). Having been waived, these claims of prosecutorial misconduct are subject to procedural default, and they are not appropriate for federal habeas review.

In regard to Petitioner's claims of prosecutorial misconduct which are properly before this Court, the record clearly reveals that the state courts' resolution of this issue was certainly reasonable. The state courts neither contradicted nor unreasonably applied federal law in denying these claims, and Mr. Disco is not entitled to federal habeas corpus relief.

## RECOMMENDATION

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING.  It is further commended that a finding be made that there is no probable cause to issue a certificate of appealability.[20]

BY THE COURT:

 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By E-mail:      Hon. C. Darnell Jones, II
                Cheryl J. Sturm, Esq.         sturmcj@aol.com
                Joshua S. Goldwert, Esq.      joshua.goldwert@phila.gov

---

[20]Petitioner is advised that he may file objections to this Report and Recommendation.  *See* Local R. Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate right.